J-A02016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| V. | |
| SUK CHUL CHANG, M.D. | |
| Appellant | No. 3242 EDA 2012 |

Appeal from the Order Dated October 26, 2012
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-MD-0000950-2012

BEFORE:  FORD ELLIOTT, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.                    **FILED JULY 30, 2014**

Suk Chul Chang, M.D., appeals from the order, dated October 26, 2012, in the Court of Common Pleas of Montgomery County, denying the Petition for Return of Property,[1] pursuant to Pa.R.Crim.P. 588.[2]  Pursuant to a search warrant, the Delaware County District Attorney seized, *inter alia*, an

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Dr. Chang filed this timely appeal prior to his death.  On March 13, 2013, Dr. Chang's attorney filed a Notice of Death in this Court.  On the same day, Dr. Chang's attorney also filed a Praecipe for Substitution of Successor, substituting Kyoung Sook Chang, M.D., in her capacity as personal representative of the Estate of Suk Chul Chang, M.D., as appellant in this appeal.

[2] "[B]oth this Court and the Commonwealth Court have jurisdiction to decide an appeal involving a motion for the return of property filed pursuant to Pa.R.Crim.P. 588." **Commonwealth v. Durham**, 9 A.3d 641, 642 n.1 (Pa. Super. 2010), *appeal denied*, 19 A.3d 1050 (Pa. 2011).

annuity account owned by Dr. Chang, and valued at approximately $389,893.00.[3]  Dr. Chang contends the trial court erred in denying Dr. Chang's motion for return of property, seeking return of the annuity account. Based upon the following, we affirm.

The facts underlying this appeal were set forth in the trial court's opinion, as follows:

> On April 16, 2012, Suk Chul Chang, M.D., commenced this miscellaneous court action [in the Court of Common Pleas of Montgomery County] by filing an application for relief styled as a "Motion for Return of Property" (hereinafter, "motion" or "the motion") that averred the following facts.
>
> Dr. Chang resides in Wynnewood, Montgomery County. The Delaware County District Attorney (hereinafter "District Attorney") charged him with crimes in a pending criminal action indexed at no. 3824-2009, based on a criminal complaint filed by Detective Daniel Leicht, an officer of the Collingdale Borough Police Department and member of the Delaware County C.I.D. Drug Task Force. Dr. Chang was originally charged with 180 counts of illegal delivery of controlled substances between 2005 and 2007. All but eleven of the charges were dismissed at the preliminary hearing.
>
> Acting on search warrants issued by two magisterial district judges in Delaware County, the District Attorney seized three investment accounts and a bank account, which together represent Dr. Chang's entire "liquid net worth." Two of the three investment accounts were annuity contracts with Fidelity Investment Life Insurance Company (FILI), and the other was a Fidelity Brokerage Services LLC brokerage account.

_____

[3] **See** Trial Court Opinion, 1/15/2013, at 4; Dr. Chang's Motion for Return of Property at 3, ¶6.B.

According to Dr. Chang, the two annuity accounts were seized pursuant to a warrant issued by a magisterial district justice on November 18, 2008. The warrant listed the place to be searched as FILI's Covington, Kentucky office. It was personally served on November 18th at the Philadelphia office of Fidelity Brokerage Services, which faxed it to FILI's Covington, Kentucky office. The affidavit of probable cause implied that authority for seizing the accounts was based on the Forfeiture Act, 42 Pa.C.S. § 6801, because it stated that Dr. Chang's accounts "are illegal proceeds collected by Suk C. Chang through his illegal practices for his (Suk C. Chang's) own monetary gains and are subject to forfeiture." Upon receipt of the warrant, FILI froze the annuity accounts.

Although the motion sought the return of all three accounts, this appeal pertains to only one of the annuity accounts, as the District Attorney returned the other two accounts to Dr. Chang shortly before this court heard the motion. With regard to the annuity account retained by the Commonwealth at the time of the hearing, the motion claimed that the seizures were invalid[.] … The motion asked this court to file an order "invalidating the search warrants" and "directing the Commonwealth to return control of [Dr. Chang's] FILI annuities and Fidelity Brokerage Services account to [Dr. Chang]."

The undersigned judge held an evidentiary hearing on the motion on Thursday, October 25, 2012. At the beginning of the hearing, [Dr. Chang's] lawyers stated on the record that the Commonwealth had sought and obtained leave from Judge George A. Pagano of the Delaware County Court of Common Pleas to return the brokerage account and one of the annuity accounts to Dr. Chang. They stated that those two accounts were worth approximately $2.2 million, and the account the Commonwealth retained was worth approximately $389,893.00. They also placed into evidence a letter from a vice president of FILI that stated that Dr. Chang had not deposited money into the annuity account in question since January 17, 2006. The Assistant District Attorney stipulated that the information in the letter was correct. In view of that stipulation, defense counsel refrained from placing account balance records into evidence, as those records would merely have been cumulative proof of the deposit history of the account in question.

- 3 -

The Assistant District Attorney produced Detective Leicht as a witness. Detective Leicht testified that he received information in 2007 from an informant, Gary Krobath, that Dr. Chang was illegally "prescribing schedule three and schedule four narcotics for cash benefits." From another source he learned that several years before then, Dr. Chang had relinquished his legal privilege to prescribe schedule two narcotics after an investigation by the federal Drug Enforcement Agency in which no criminal charges had been filed.

Krobath told Detective Leicht that Dr. Chang had been giving him prescription slips made out to others, including his girlfriend, Deana Miccio. Detective Leicht interviewed Ms. Miccio, who told him that she did not know Dr. Chang and had never met him. She did not appear to be under the influence of narcotics, she did not appear to "be someone who takes illegal substances," and she was surprised to learn that Dr. Chang kept a file under her name. Detective Leicht had Krobath make a "controlled buy" of prescription slips from Dr. Chang. Detective Leicht had learned that a person could not make an appointment with Dr. Chang as a new "patient" without being referred by a current client, so at the time of the controlled buy, he also had Krobath give him such a referral as Krobath's "brother," using the pseudonym Danny Krobath. Krobath returned from the controlled buy with prescription slips for narcotics in the names of Gary Krobath and Danny Krobath.

Two or three weeks later, Detective Leicht went to Dr. Chang's office posing as Danny Krobath. In the waiting room he saw a man dressed in street clothes holding medical files and taking cash from the six or seven other persons there. Two of the other persons in the waiting room were drinking beer. Although there was a sign-in sheet in the room, nobody signed it. When a young woman went into [Dr. Chang's] office, she left only two minutes later with prescription slips. After approximately two hours, Detective Leight saw Dr. Chang, who had already prepared a file for "Danny Krobath." The file contained no medical data other than fictional values for Danny Krobath's height and weight, but it did include false information regarding previous office visits. Dr. Chang prescribed narcotics without asking Detective Leicht any medical questions or otherwise conducting a medical examination.

Still posing as Danny Krobath, Detective Leicht returned on a later date as a member of a law enforcement team that executed a search warrant on Dr. Chang's office. Before the team executed the warrant, the clients in the waiting room were handing prescription slips to each other and making plans to fill the prescriptions and then transfer possession of the prescribed narcotics. Detective Leicht asked several of them how he could get Dr. Chang to write him prescription slips made out to other persons, and they answered that he would be willing to do so after he had seen Leicht several times.

Following the execution of the search warrant on Dr. Chang's office, Detective Leicht interviewed several other persons who had been receiving prescription slips from him for several years to obtain narcotics for their own use or resale. For one such client, Paul Griffiths, the Commonwealth seized a file from Dr. Chang in which he had recorded the narcotics prescriptions given to Mr. Griffiths since 2003. Detective Leicht concluded his testimony without any objection or cross-examination by Dr. Chang's lawyers. Based on Detective Leicht's demeanor, the undersigned judge found his testimony credible, and because defense counsel made no timely objections, all of his testimony was admissible.

The Commonwealth then produced the testimony of Zachary Marks, a forensic accountant employed by the District Attorney. Mr. Marks testified that between 2005 and 2006, [Dr. Chang] deposited a total $250,000 principal into the annuity account at issue. Of that amount, $50,000 came from a Citizens Bank account into which [Dr. Chang] had not deposited funds between 2002 and 2009, but $200,000 came from a Citizens Bank account into which [Dr. Chang] had deposited funds between 2002 and 2008. The funds from the latter account came from [Dr. Chang's] medical practice. The other money in the annuity account at issue was interest on those deposits of principal.

Mr. Marks concluded his testimony without timely objection by defense counsel. Other than the letter from FILI, Dr. Chang's lawyers produced no evidence. The parties then presented argument and the hearing ended.

Trial Court Opinion, 1/15/2013, at 1–7 (footnotes omitted).[4]

As is evident from this appeal, Dr. Chang filed his Motion for Return of Property in Montgomery County, seeking the return of his annuity. **See** Pa.R.Crim.P. 588 (providing motion for return of property shall be filed in the court of common pleas for the judicial district where the property is located at the time of seizure).[5] Subsequently, on August 17, 2012, the Delaware

---

[4] We note that the record for the Delaware County criminal prosecution against Dr. Chang is not part of the certified record in this case, nor does it appear that it was available to the trial court.

[5] Rule 588 provides in pertinent part:

> (A) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

> (B) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

Pa.R.Crim.P. 588 (A),(B).

The annuity at issue here is intangible property, and therefore its situs follows the domicile of the owner. **See Laird v. Laird**, 421 A.2d 319, 320 (Pa. Super. 1980), *citing* **Selig v. Selig**, 268 A.2d 215, 218 (Pa. Super. 1970) ("The *res* here involved is a bank account in which defendant has an intangible interest. That interest being merely an intangible legal concept, incapable of an actual physical situs, its situs is the domicile of the person who has control over the fund.").

County District Attorney filed a forfeiture petition pursuant to the Controlled Substances Forfeiture Act ("Forfeiture Act"), 42 Pa.C.S. § 6801(d), in the Court of Common Pleas of Delaware County. *See* Commonwealth's Motion to Dismiss Defendant's Return of Property Motion for Improper Venue, 10/11/2012, at 4, ¶20.

The order denying Dr. Chang's motion for return of property states, in relevant part:

> [T]he Commonwealth has produced sufficient evidence to establish a specific nexus between annuity contract no. 323349137 and criminal conduct by Dr. Chang, hence the Motion for Return of Property is denied. This Court makes no determination as to the claims raised by Dr. Chang in sub-paragraphs 40.1, 40.2, 40.3, 40.5 and 40.6, and those claims are denied without prejudice to whatever rights Dr. Chang may have to raise them in an answer to the Commonwealth's motion under the Forfeiture Act, which is pending in the Delaware County Court of Common Pleas. The claims raised in sub-paragraphs 39.1-39.6 and 41.1-41.6 are dismissed as moot.

Order, dated 10/26/2012, docketed 10/31/2012. This appeal followed.[6]

---

[6] The Commonwealth maintains the appeal is from an interlocutory order, and in support cites this Court's decision in **Commonwealth v. Lewis**, 431 A.2d 357 (Pa. Super. 1981). The Commonwealth points out the denial of a motion for return of property does not result in automatic forfeiture, and the Commonwealth is required to seek forfeiture under the Forfeiture Act. **See** Commonwealth Brief at 12, *citing* **Commonwealth v. Mosley**, 702 A.2d 857 (Pa. 1997); **Boniella v. Commonwealth**, 958 A.2d 1069, 1073 (Pa. Cmwlth. 2008). The Commonwealth claims the forfeiture action would have been unnecessary if the Montgomery County order was a final order. We do not find the Commonwealth's position persuasive.

*(Footnote Continued Next Page)*

*(Footnote Continued)* _____

In ***Lewis, supra***, this Court quashed an appeal taken from a denial of a petition for the return of property. The ***Lewis*** Court found the appeal was interlocutory, reasoning:

> [G]iven the criminal proceeding *in esse* against appellant, we conclude that the "practical ramifications" of the lower court's order is not "'one which ends the litigation, or alternatively disposes of the entire case.'" Since the appellant has the opportunity to secure relief from the court below, in the form of pre-trial motions and/or post-trial motions if conviction occurs, and if unsuccessful a review by this Court exists, our holding avoids "piecemeal" litigation."

***Id.***, 431 A.2d at 360 (citations omitted).

***Lewis*** is distinguishable, however, since in ***Lewis***, it was possible for the appellant to obtain relief from the trial court's denial of his motion for return of property in a pre-trial or post-trial motion. The same is not true in this case. Here, there is no criminal action against Dr. Chang in Montgomery County. Rather, the **only** action in Montgomery County is Dr. Chang's motion for return of property pursuant to Rule 588.

The law is clear that "a proceeding for return of property is distinct from a forfeiture proceeding, and, although the two types of actions may commonly be heard together, to file one type of action does not in itself serve to initiate the other." ***Mosley, supra,*** 702 A.2d at 859. Given the distinct and separate nature of a motion for return of property and a forfeiture action, and, as well, the procedural posture of this case, we conclude that the order denying the return of property in this case is final, despite the pending forfeiture proceeding. In this regard, we are guided by the rationale set forth by this Court in ***In re New 12th Ward Republican Club***, 603 A.2d 205 (Pa. Super. 1992):

> In this case the order denying appellant's petition for return of property is final. While there may be further litigation surrounding the Commonwealth's petition for forfeiture, it is quite clear that appellant now has no right to return of the property. The lower court has effectively decided that appellant has no rights in the property, and, therefore, the litigation is final as to appellant. Accordingly, we proceed to the merits of this appeal.

*(Footnote Continued Next Page)*

On appeal, Dr. Chang raises seven issues, which we have reordered for purposes of this discussion:

1. Whether the [trial] court erred in considering the underlying merits of the forfeiture claim and finding that [the Commonwealth] established a nexus between the annuity and alleged criminal wrongdoing?

2. Whether the [trial] court erred in finding that the Court of Common Pleas of Delaware County has jurisdiction over the forfeiture petition?

3. Whether the [trial] court erred in failing to consider [Dr. Chang's] claim that the Commonwealth failed to timely file a forfeiture action?

4. Whether the [trial] court erred in failing to consider [Dr. Chang's] claims of Fourth and Fourteenth Amendment violations with regard to the seizure of his annuity?

5. Whether the [trial] court erred in failing to consider the value of the property seized in conjunction with the parameters of the excessive fines clause of the Eighth Amendment?

6. Whether the forfeiture action should be dismissed as a result of the death of Dr. Chang?

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

*Id.* at 207 (citations and footnote omitted).

The trial court, based upon Dr. Chang's request for the release of the seized account to pay legal expenses, "heard only evidence relevant to the question of a nexus between the annuity account and unlawful activity," and ordered certain defenses deferred to the pending forfeiture proceeding in the Delaware County Court of Common Pleas. Trial Court Opinion, *supra* at 15. *See* Order, 10/26/2012. However, under the Montgomery County order at issue here, Dr. Chang has no rights in the annuity, and, therefore, the order is final and appealable. Accordingly, we will proceed to the merits of this appeal.

7. Whether the Dead Man's Statute prevents the Commonwealth from presenting the testimony of witnesses adverse to the interests of [Dr. Chang] and his Estate?

Dr. Chang's Brief at 3; Supplement to Dr. Chang's Brief at 1.[7]

The principles that guide our review are as follows: "The standard of review applied in cases involving motions for the return of property is an abuse of discretion." **Commonwealth v. Durham**, 9 A.3d 641, 645 (Pa. Super. 2010) (citation omitted), *appeal denied*, 19 A.3d 1050 (Pa. 2011). Pennsylvania Rule of Criminal Procedure 588 provides, in pertinent part, that "[a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof." Pa.R.Crim.P. 588(a). Proceedings under Rule 588 are governed by the "preponderance of the evidence" standard and involve a shifting burden of proof:

> Under [Rule 588], on any motion for return of property, the moving party must establish by a preponderance of the evidence entitlement to lawful possession. Once that is established, unless there is countervailing evidence to defeat the claim, the moving party is entitled to the return of the identified property. A claim for return of property can be defeated in two ways: an opposing party can establish that it, not the moving party, is entitled to lawful possession to the property or the Commonwealth can seek forfeiture claiming that property for which return is sought is derivative contraband. To meet its burden to defeat the motion for return of property, the

_____

[7] Dr. Chang timely complied with the order of the trial court to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Commonwealth must make out more than simply demonstrating that the property was in the possession of someone who has engaged in criminal conduct. It must establish a specific nexus between the property and the criminal activity.

The law is well settled that:

[o]n a motion for return of property, the moving party has the burden of proving ownership or lawful possession of the items. The burden then shifts to the Commonwealth to prove, by a preponderance of the evidence, that the property is contraband.

[D]erivative contraband is property which is innocent in itself but which has been used in the perpetration of an unlawful act. Property is not derivative contraband, however, merely because it is owned or used by someone who has been engaged in criminal conduct. Rather, the Commonwealth must establish a specific nexus between the property and the alleged criminal activity.

**Durham, supra** at 645–646 (citations and footnote omitted).[8]

Dr. Chang's initial claim is divided into two arguments: (A) The trial court erred in considering the underlying merits of the forfeiture claim, and (B) The trial court erred in finding that the Commonwealth established a nexus between the annuity and alleged criminal wrongdoing because there were no deposits into the annuity during the time of the criminal wrongdoing alleged in the criminal action. Dr. Chang's Brief at 41, 44.

_____

[8] "[A] preponderance of the evidence is tantamount to a 'more likely than not' standard." **Commonwealth v. $6,425.00 Seized from Richard Esquilin**, 880 A.2d 523, 529 (Pa. 2005) (citations omitted).

- 11 -

Dr. Chang's first argument, that the trial court erred in considering the underlying merits of the forfeiture claim, may be summarily dismissed as follows. First, the trial judge acceded to Dr. Chang's demand for a pre-trial hearing on his motion for return of property, based on his attorneys' averment that Dr. Chang needed the seized accounts to pay for his legal defense.[9] *See* Trial Court Opinion, *supra* at 15; *See also* N.T., 10/25/2012, at 82; Dr. Chang's Memorandum of Law in Support of [Dr. Chang's] Motion for Return of Property, 4/16/2012, at 7. Secondly, the trial court took particular care to hear only evidence relevant to the question of nexus between the annuity account and illegal activity, so that Dr. Chang would be protected from making incriminating statements prior to trial, and so that he could assert his legal defenses post trial in the forfeiture action. *See id.* at 14-15. *See also* N.T., *supra*, at 49 (trial judge stating, "[T]he issue before me is nexus. That's the way I'm viewing this."). Finally, as pointed out by the trial court, "Dr. Chang's lawyers were aware that the issues raised in [the Rule 588] hearing could be relevant to the hearing on the forfeiture petition, and took that into account when deciding what evidence and argument to place on the record." Trial Court Opinion, *supra*

_____

[9] We note that the Commonwealth, prior to the hearing on Dr. Chang's motion for return of property, did return two seized accounts, the brokerage account and one of the annuity accounts, together worth approximately $2.2 million. *See* N.T., 10/25/2012, at 4–5.

at 18 & n.55. Therefore, we reject Dr. Chang's claim that the trial court erred in considering the underlying forfeiture claim.

The second part of Dr. Chang's claim is that the trial court erred in finding a nexus between the annuity and alleged criminal wrongdoing. Specifically, Dr. Chang argues that "the evidence presented by [the Commonwealth] did not establish that there were deposits into [Dr. Chang's] annuity in April and May of 2007, the time when [Dr. Chang] was charged with having been engaged in criminal wrongdoing."[10] Dr. Chang's Brief at 44.

Pursuant to Rule 588, Dr. Chang had the initial burden of proving lawful entitlement to possession of the property. *See Durham, supra* at 645–646. The trial court, in its opinion, stated that Dr. Chang did not sustain his initial burden of proof.[11] *See* Trial Court Opinion, *supra* at 22. We disagree with that determination. Here, Dr. Chang's counsel argued "[t]he alleged criminal activity in this case took place in April and May 2007," and introduced a letter, which was stipulated to by the Commonwealth,[12]

_____

[10] Dr. Chang's Motion for Return of Property avers that he was charged with violating 35 P.S. § 780-113(a)(14) on April 10, 2007, April 26, 2007, and May 17, 2007. *See* Dr. Chang's Motion for Return of Property, p. 5, ¶8.

[11] The trial court did not state this finding in its order denying Dr. Chang's Motion for Return of Property. *See* Order, 10/26/2012, *supra*.

[12] *See* N.T., 10/25/2012, at 9 (stipulation that the last deposit into the annuity account was on January 17, 2006).

from the vice president of FILI, stating that Dr. Chang had not deposited money into the annuity account in question since January 17, 2006. N.T., 10/25/2012, at 6, 7–9; Defendant's Exhibit D-1.  We are satisfied that this letter, together with Dr. Chang's Pa.R.Crim.P. 575(A)(2)(g) verification attached to his motion for return of property, established by a preponderance of the evidence Dr. Chang's lawful possession of the annuity. *See* Dr. Chang's Motion for Return of Property (with Memorandum of Law), 4/16/2012, "Verification."  *See Commonwealth v. Johnson*, 931 A.2d 781, 784 (Pa. Cmwlth. 2007), ("At a minimum, our rules and case law mandate [movant] properly allege, *under oath*, lawful possession of the currency.  Pa.R.Crim.P. 575(A)(2)(g)[.]"). Therefore, the burden shifted to the Commonwealth to prove by a preponderance of the evidence that the property is contraband by showing a specific nexus between the property and the criminal activity.  *See Durham, supra*.  The trial court found that the Commonwealth satisfied this burden.  *See* Trial Court Opinion, *supra*, at 22–26. We turn, then, to the Commonwealth's evidence.

The testimony of Commonwealth witness, Detective Daniel Leicht, established, *inter alia*, that, based on information from an informant, he arranged a controlled buy of prescription slips for narcotics  from Dr. Chang, using the informant in April, 2007, and that he himself, posing as "Danny Krobath," obtained prescription slips for narcotics from Dr. Chang two or three weeks later, without a medical examination, or any medical questioning.  Moreover, following execution of the search warrant, he talked

to other individuals who either had a chart at the office or were present on the day of the execution of the search warrant. Leicht stated these individuals told him they were going to Dr. Chang for prescribed drugs "for their own abuse or to sell to make money." N.T., 10/25/2012, at 34. One such individual was named Paul Griffiths, and Griffiths' medical chart, Exhibit C-2, was introduced and admitted into evidence without objection. Griffiths' chart showed visits approximately every thirty days from 2004 to 2007, with controlled substance prescriptions issued at each visit. In addition, through Detective Leicht, the Commonwealth introduced Exhibit C-3, prepared by Agent Josh Gill based upon certain charts and records seized pursuant to the search warrants, showing a monthly breakdown of cash received by Dr. Chang for prescriptions, from November, 2001, to May, 2007, in the total amount of $296,820. Exhibit C-3 was also admitted into evidence without objection. In addition, Detective Leicht testified that Citizens Bank statements and an investment account statement were seized from Dr. Chang's office. *See* N.T., 10/25/2012, at 16–41.

The Commonwealth also presented Zachary Marks, a forensic accountant employed by the Delaware County District Attorney's office, who testified that he had examined Dr. Chang's bank statements from Citizens Bank, and Dr. Chang's annuity statement. *Id.* at 59. Marks stated there were five checks written from the Citizens Bank accounts that went into the annuity between 2005 and 2007, totaling $250,000.00. *Id.* at 60. The first deposit came from a Citizens Bank account that had no incoming deposits

from 2002 to 2009, and that $50,000 was "clean." *Id.* at 61. However, the remaining deposits, totaling $200,000.00, came from another Citizens Bank account that was active and was receiving deposits from 2002 through 2008. *Id.* at 61–62. The deposits into that Citizens Bank account came in large majority from Dr. Chang's medical practice. *Id*. at 65. Marks testified the current value of the annuity account was $402,971.13, with $282,322.16 related to the $200,000.00 that was deposited initially. *Id.* at 62. On cross examination, Dr. Chang's counsel asked Marks if he knew whether any of the money in the Citizens Bank account came from an inheritance, and Marks answered he did not. *Id.* at 64.

Dr. Chang argues he "was not charged with any criminal wrongdoing in the year 2006 or prior thereto." Dr. Chang's Brief at 44.[13] Specifically, Dr. Chang asserts: "Although [the Commonwealth's] witness, [Detective] Leicht, presented unsubstantiated hearsay about alleged criminal wrongdoing prior to April and May of 2007, in fact there [was] no evidence

---

[13] Even though Dr. Chang's Motion for Return of Property states that the Criminal Complaint alleges that he issued prescriptions in violation of 35 P.S. § 780-113(a)(14) on April 10, 2007, April 26, 2007, and May 17, 2007, we have already noted the record for the Delaware County criminal action is not part of the certified record in this appeal, and Dr. Chang's summary of the criminal proceeding in a footnote in his brief does not equate to the record. *See* Dr. Chang's Motion for Return of Property, 4/16/2012, at 5, ¶8; Dr. Chang's Brief at 8 n.3.

to substantiate that hearsay and there were no criminal charges to support [Detective] Leicht's unsubstantiated hearsay." *Id.*

While Dr. Chang's argument may be facially attractive, we cannot conclude on the record presently before this Court that the trial court committed an abuse of discretion in finding that the Commonwealth showed a nexus between the annuity and criminal conduct. Our review of the record confirms that "Detective Leicht concluded his testimony without any objection or cross-examination by Dr. Chang's lawyers." Trial Court Opinion, *supra* at 6. Furthermore, the Commonwealth's unchallenged evidence included Exhibits C-2 and C-3, discussed above. Although Dr. Chang's counsel did cross-examine Marks, and asked whether any money in the Citizens Bank account came from an inheritance, Marks said he did not know. Dr. Chang's counsel did not present any evidence to rebut the Commonwealth's evidence.

The trial court, in determining that the Commonwealth established a nexus between the annuity and the criminal wrongdoing, reasoned:

> In this case, Dr. Chang was illegally prescribing narcotics when he was arrested and had been doing so since 2003. … Dr. Chang was in control of the [annuity] at the time of his arrest and the Commonwealth's evidence showed that $200,000 of the $250,000 deposited into the annuity account at issue came from his medical practice during the period when he was selling prescriptions for narcotics. … The evidence in this case does not enable one to correlate the funds in the seized annuity account to specific illegal prescriptions, but **Singleton** [**v. Johnson**, 929 A.2d 1224, 1227 (Pa. Cmwlth. 2007) (*en banc*) (discussing inferences based upon circumstantial evidence)] nevertheless allowed the undersigned judge to infer a specific nexus between

those funds, which derived from Dr. Chang's medical practice, and the illegal prescriptions that he had been writing as far back as 2003. Therefore this court did not commit reversible error by finding that the Commonwealth proved a specific nexus between the account and criminal activity by a preponderance of the evidence.

Trial Court Opinion, *supra* at 25–26.

In light of the evidence discussed above, we conclude that the trial court's rationale is sound, and the trial court properly exercised its discretion in denying the motion for return of property. Accordingly, Dr. Chang's first argument fails to warrant relief.

Turning to the remaining arguments presented by Dr. Chang, we find that these claims do not pertain to the motion for return of property, but rather are issues that remain to be litigated in the forfeiture action. Therefore, no further discussion is warranted on these claims. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2014