J-S56007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM PAUL TAYLOR | : | |
| | : | |
| Appellant | : | No. 1495 EDA 2019 |

Appeal from the Order Entered April 23, 2019
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0008595-2017

BEFORE: PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.: **FILED JANUARY 28, 2020**

William P. Taylor appeals,[1] *pro se*, from the order of April 23, 2019 granting the Commonwealth's petition for forfeiture of money, firearms, two iPhones, and one Apple watch (collectively, "cellular equipment"),[2] and

_____

[1] In its 1925(a) opinion, the trial court contends Appellant filed his appeal with the wrong court. **See** Trial Court Opinion, 7/30/19, at 2. However, "[b]oth this Court and the Commonwealth Court have jurisdiction to decide an appeal involving a motion for the return of property filed pursuant to Pa.R.Crim.P. 588." **Commonwealth v. Durham**, 9 A.3d 641, 642 n.1 (Pa. Super. 2010) (citation omitted), *appeal denied*, 19 A.3d 1050 (Pa. 2011); **In Re One 1988 Toyota Corolla**, 675 A.2d 1290 (Pa. Cmwlth. 1996).

[2] On appeal, Appellant abandons his challenge to the forfeiture of the money and firearms and only seeks return of the cellular equipment.

denying his motion for return of property.[3]  After careful review, we reverse in part and remand.

We take the underlying facts and procedural history in this matter from our review of the certified record. In October 2017, agents from the Pennsylvania Attorney General's Office conducted an investigation into a drug selling business operated by Appellant and Eric Stubbs. The agents conducted two controlled buys of narcotics from Stubbs before arresting Appellant and Stubbs immediately prior to a third arranged drug sale.

Appellant and Dillard were present in a separate car during the first controlled buy. However, law enforcement watched Stubbs leave the undercover agent's car and walk over to Appellant's car. There, they saw Appellant hand Stubbs an item. Stubbs then walked back to the undercover agent's car and sold cocaine to the agent. After the sale, some agents followed Appellant and Dillard back to their home and other agents followed Stubbs as he first drove to a bank, then drove to Appellant's home and gave money to Appellant.

Immediately prior to the second sale, Stubbs drove to Appellant's home. He and Stubbs then drove off in a car, rented by Appellant, to meet with the

_____

[3] Appellant's co-defendant and girlfriend, LaToya Dillard, also filed an appeal from this order. However, we quashed her appeal as untimely filed on November 8, 2019. **See Commonwealth v. Dillard**, 1650 EDA 2019.

agent. Stubbs exited Appellant's car, entered the agent's car, and sold the agent cocaine.

Again, prior to the third meeting, in which Stubbs was to sell the agents Percocet and cocaine, Stubbs drove to Appellant's home, retrieved a yellow bag from his car and went inside Appellant's residence. They soon left, each going to a different location, and with Appellant now in possession of the yellow bag.

Stubbs contacted the agent to tell her he was "still putting the pills together." Stubbs drove back to Appellant's location and, in separate cars, both drove to the agreed-upon location for the sale. When the men arrived, the agents arrested them and subsequently executed a search warrant on Appellant's home. It is not apparent from the record whether the agents recovered the cellular equipment at issue from Appellant's person or from his home.[4]

_____

[4] In his brief, Appellant alternately states that the agents recovered the cellular equipment during the search of the residence and from his person. **See** Appellant's Brief, at 5 and 7. The Commonwealth claims that it recovered the cellular equipment from a search of Appellant's person. **See** the Commonwealth's Brief, at 4. However, the Commonwealth does not cite to the record to support this statement. In its opinion, the trial court did not discuss whether the agents found the cellular equipment on Appellant's person or in his house. **See** Trial Court Opinion, 7/30/19. We are unable to discern the truth of the matter from the record.

On September 21, 2018, Appellant entered a negotiated guilty plea to one count of possession with intent to deliver and one count of a violation of the Uniform Firearms Act. That same day, the trial court sentenced Appellant in accordance with the terms of the plea agreement to 4 to 10 years' imprisonment followed by 7 years' probation. Subsequently, the Commonwealth moved for forfeiture of the cellular equipment, money, and firearms and Appellant sought return of the property.[5] Following a hearing on April 23, 2019, the trial court granted the petition for forfeiture and denied the motion for return of property. The instant timely appeal followed.[6]

In his only issue on appeal, Appellant challenges the grant of forfeiture and the denial of his motion for return of the cellular equipment. Our standard of review is settled. We review only to determine "whether the findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law." ***Commonwealth v. Heater***, 899 A.2d 1126, 1132 (Pa. Super. 2006) (citation omitted).

---

[5] The Commonwealth returned the data stored on the devices to Appellant, so the only issue on appeal is return of the devices themselves.

[6] In response to the trial court's May 24, 2019 order, Appellant filed a timely concise statement of errors complained of on appeal on June 6, 2019. The trial court subsequently issued an opinion.

Pennsylvania law provides that "things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act" are subject to forfeiture. 42 Pa.C.S.A. § 5802(6)(i)(B). Because "the law generally disfavors forfeitures," the Forfeiture Act must "be strictly construed." *Com. v. $301,360.00 U.S. Currency*, 182 A.3d 1091, 1097 (Pa. Cmwlth. 2018) (quotation omitted).[7]

In a forfeiture proceeding, "the Commonwealth bears the initial burden of demonstrating, by a preponderance of the evidence, that a substantial nexus exists between the seized property and a violation of the [Drug] Act." *Com. v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529 (Pa. 2005). "A preponderance of the evidence is tantamount to a 'more likely than not' standard." *Id.* The Commonwealth may satisfy its burden by circumstantial evidence, but it must show "more than a mere suspicion of a nexus." *$301,360.00 U.S. Currency*, *supra* at 1097. If the Commonwealth establishes a substantial nexus, then the burden shifts to the claimant to prove that he or she owns the property, lawfully acquired the property, and did not unlawfully use or possess it. *Id.*

---

[7] While decisions of the Commonwealth Court are not binding upon us, they may serve as persuasive authority. *See Commonwealth v. Ortega*, 995 A.2d 879, 885 (Pa. Super. 2010).

Here, Appellant contends the Commonwealth failed to establish a substantial nexus between the seized cellular equipment and the drug business. *See* Appellant's Brief, at 7-11. We agree.

The Commonwealth relies on four points to support its claim it established a substantial nexus: (1) Appellant called the undercover agent from a cell phone immediately prior to his arrest; (2) Appellant and Stubbs used cell phones to coordinate their drug enterprise as a team; (3) Appellant admitted he used one of the cell phones to text Stubbs; and, (4) all Apple products are linked, so that any texts regarding the drug business would appear on all three of the devices. *See* the Commonwealth's Brief, at 7; N.T. Hearing, 4/23/19, at 23. However, the record belies these contentions.

At the hearing, the only evidence presented by the Commonwealth was the testimony of Agent Edward Rodriguez of the Pennsylvania Attorney General's Office. While Agent Rodriguez testified about the underlying investigation and the firearms, money, and drugs the agent seized from the persons, vehicles, and homes of Appellant and his co-defendants, he did not testify about the cellular equipment. N.T. Hearing, 4/23/19, at 3-20. He also did not testify about the general use of cellular equipment in the drug trade. *See id.*

While the Commonwealth claims Agent Rodriguez testified Appellant used a cellular phone to call the undercover agent immediately prior to his arrest at the third drug sale that is a misstatement of the record. What Agent

Rodriguez actually testified was Appellant and Stubbs, in separate vehicles, were driving to the buy location when, ". . . **Eric (sic) Taylor** asked Agent Pugh to move, he then told her to just park over by the Shake Shack Parking lot." **Id.** at 13-14 (emphasis added, parentheses in original).

There is no Eric Taylor involved in this matter. According to Agent Rodriguez, all the various undercover agents' communications had been with Eric Stubbs. **See id.** at 3-20. There was no testimony any of the agents ever communicated with Appellant, William Taylor. Given this, it is reasonable to infer this was a misstatement by Agent Rodriguez and he meant to say Eric Stubbs, not Eric Taylor. In its decision, the trial court did not find Appellant ever used his cell phone to contact the undercover agent. **See** Trial Court Opinion. 7/30/19, at 10. Thus, the record does not support the Commonwealth's claim Appellant used one of the cellular phones to directly contact an undercover agent.

The Commonwealth also argues Stubbs and Appellant used cell phones to coordinate their drug business. However, again, the record does not support this contention.

The Commonwealth did not offer into evidence any cellular records, let alone any records that showed texts or calls between Stubbs and Appellant or between Appellant and anyone else regarding the drug business. While Agent Rodriguez testified extensively about **Stubbs'** use of a cell phone to coordinate the drug buys with the undercover agents, he did not testify about Appellant's

use of a cell phone. ***See*** N.T. Hearing, at 3-20. Rather, to the contrary, all his testimony regarding their coordination showed the two met in person, either in cars or at Appellant's residence.[8] ***See id.*** Thus, the Commonwealth has not shown Stubbs and Appellant used cell phones to coordinate their drug activities.

The Commonwealth contends Appellant admitted he used one of the phones to text Stubbs in October 2017. ***See id.*** at 23-24. Appellant testified, and the Commonwealth conceded, he and Stubbs were long-time friends. ***See id.*** at 23. While Appellant admitted he used the silver iPhone to text Stubbs in October of 2017, there was no testimony about the content of the texts and no evidence of record to show the texts concerned the drug business. ***See id.*** at 23-24. To the contrary, all the evidence garnered by the Commonwealth showed the two met in person to coordinate the drug business. ***See id.*** at 3-20.

Lastly, the Commonwealth argued Apple links all of the devices it manufactures, so any texts Appellant received on one phone would also be received on the other phone and the watch. However, while the

---

[8] While the Commonwealth makes much of the "ubiquitous" use of cell phones in the drug trade, ***see*** the Commonwealth's Brief, at 9, it chose not to present any testimony regarding this at the forfeiture hearing. Moreover, the record reflects the cell phones in question were not the "burner" phones commonly used in the trade, but instead Apple devices that contained personal photographs and videos. N.T. Hearing, 4/23/19, at 23-24, 34-36.

Commonwealth made this argument at the forfeiture hearing, it failed to produce any evidence to support the contention. ***See id.*** at 23; 34-36.

In its opinion, the trial court devotes little attention to the cellular equipment, merely stating it agreed with the Commonwealth's position and the record substantially supports its finding without otherwise making specific findings of fact regarding the cellular equipment or explaining the legal basis of its decision. Trial Ct. Op., at 14. However, as discussed above, the record is simply devoid of any information that shows a substantial nexus between Appellant's cellular equipment and his drug business. Therefore, the Commonwealth failed to meet its initial burden and only showed there was "a mere suspicion of a nexus." ***$301,360.00 U.S. Currency***, ***supra*** at 1097; ***see Esquilin***, ***supra*** at 529. Thus, we are constrained to find the trial court abused its discretion in granting forfeiture of the cellular equipment. ***See Heater***, ***supra*** at 1132. Accordingly, we reverse the portion of the order of April 23, 2019, which granted forfeiture of the cellular equipment and we remand for entry of an order granting Appellant's motion for return of the cellular equipment.

Order reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/20