J-S37027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
ROBERTO MAGOBET :
:
Appellant : No. 138 EDA 2023

Appeal from the Order Entered December 1, 2022
In the Court of Common Pleas of Carbon County
Criminal Division at No(s): CP-13-MD-0000074-2022

BEFORE: BENDER, P.J.E., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED FEBRUARY 9, 2024**

Roberto Magobet ("Magobet") appeals, *pro se*, from the order denying his motion for return of property and granting the Commonwealth's petition for forfeiture of money.[1] After careful review, we affirm.

The trial court delineated the underlying facts:

[C]hief Audie Mertz and Officer Jeff Frace of the Mahoning Township Police Department were dispatched to a complaint about the driver of a Cadillac that was blocking access to the driveway for [a] residence . . . in Mahoning Township. Officer Frace arrived on scene . . . [and] observed the Cadillac parked in front of the driveway with [] Magobet, as the sole occupant seated in the driver's seat. Standing next to the vehicle was a known drug offender with whom [Magobet] was talking. Officer Frace also testified that the home at which [Magobet] was parked was a known drug house and the location a high-traffic drug area.

_____

[1] We note, "[b]oth this Court and the Commonwealth Court have jurisdiction to decide an appeal involving a motion for the return of property filed pursuant to Pa.R.Crim.P. 588." **Commonwealth v. Durham**, 9 A.3d 641, 642 n.1 (Pa. Super. 2010) (citation omitted); **In Re One 1988 Toyota Corolla**, 675 A.2d 1290, 1296 (Pa. Cmwlth. 1996).

During a background investigation, Officer Frace learned [Magobet] was driving under suspension, a misdemeanor offense due to [Magobet's] habitual offender status[] and was on state parole. Officer Frace also learned the vehicle was neither owned nor registered to [Magobet], with [Magobet] advising Officer Frace he had purchased the vehicle from the last known owner. The vehicle had an expired inspection [sticker] and did not have a valid registration.

[Because of Magobet] driving without a valid driver's license, the vehicle not being properly registered or inspected, and the parking violation, [Magobet] was arrested. A search incident to arrest found $5,338.00 in U.S. currency on [Magobet's] person. A small amount of methamphetamine was also found on the driver's floor of the vehicle near where [Magobet] had been sitting when Officer Frace first arrived on scene. The vehicle was towed from the scene, impounded[,] and searched the following day pursuant to a search warrant. During this search, a glass pipe with residue and a clear plastic tube with residue was found.

Six days later, [a s]tate [p]arole [agent], who [was] making a supervised visit to [Magobet's] home in Jim Thorpe, observed a small amount of methamphetamine on the front porch. Upon entering the home, [the agent] discovered a large amount of narcotics and contacted the Jim Thorpe Police Department[,] which secured a search warrant. A search of [Magobet's] home located significant amounts of fentanyl and heroin [] with a street value [of more than] $26,000.00, and methamphetamine [] with a street value [of more than] $20,000.00, as well as various items of drug paraphernalia. After [Magobet] was arrested and **Mirandized**,[2] he admitted [] the contraband was his and [] he was a major drug dealer in the area. At the time of this arrest, $2,000.00 in U.S. currency was also found on [Magobet's] person.[3]

---

[2] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

[3] Because of the severity of federal charges filed after the search of Magobet's home, the Mahoning Township police did not file charges because of the drugs and paraphernalia they found in the Cadillac. **See** N.T., 11/26/22, at 31-32, 60-61.

Trial Court Opinion, 3/1/23, at 2-3 (record citations omitted, footnotes added).

Prior to deciding not to file charges relating to the drugs and paraphernalia found in the Cadillac, the Commonwealth served a forfeiture notice pursuant to Pennsylvania's Forfeiture Act, 42 Pa.C.S.A. §§ 5801-5808, on Magobet, regarding the $5,338.00 seized from his person,[4] and advised him of his right to seek return of the property. Magobet filed a *pro se* petition for return of property[5] pursuant to Pennsylvania Rule of Criminal Procedure 588(A).[6] The Commonwealth filed an answer seeking forfeiture of the

_____

[4] The forfeiture Act provides, in relevant part, the following items may be forfeited to the Commonwealth:

> (A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.

> (B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa.C.S.A. § 5802(6)(i)(A), (B).

[5] The property in question is the $5,338.00 seized during the first encounter, not the drugs and monies seized during the search of Magobet's home six days later. *See* Petition for Return of Property, 3/11/22, at 1.

[6] Rule 588 provides in relevant part:

*(Footnote Continued Next Page)*

$5,338.00, contending the money seized was related to Magobet's drug trafficking business. **See** Commonwealth's Answer, 7/7/22, at 1-3 (unnumbered). The trial court held a hearing at which Officer Frace and Police Officer Ryan Poeldnurk of the Jim Thorpe Police Department testified as described above. The trial court summarized Magobet's testimony:

> [Magobet] testified the money seized by the police . . . was his and [] was legally acquired. Specifically, [Magobet] testified to two stimulus check payments he received from the federal government totaling $2,000.00 . . . which were direct deposited into an account for him. [Magobet] testified the source of the additional $3,338.00 found on his person was from under-the-table employment he had with Chris Lyden 570[7] during [] two months . . . during which time he received cash payments of approximately $500.00 every week. ***[Maboget] claimed the $2,000.00 was withdrawn by him during the week immediately preceding his arrest and that he never deposited the cash payments he received from Chris Lyden 570 because he didn't have a bank account.*** This . . . explained how $5,338.00 came to be on his person at the time of his arrest. . ..

Trial Court Opinion, 3/1/23, at 5 (record citations omitted, emphasis added).

---

> [a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Pa.R.Crim.P. 588(A).

[7] There is no further information about the nature of Magobet's employment in the certified record.

The trial court denied Magobet's petition for return of the $5,338.00 and granted the Commonwealth's request for forfeiture. The instant, timely appeal followed.[8]

Magobet raises two issues for our review:

I.    Did the trial court err[] in granting the Commonwealth's request for forfeiture of the U.S. Currency . . . as the Commonwealth's evidence falls short in proving a sufficient and substantial nexus between the forfeited cash and illegal drug activity?

II.    Did the trial court err in failing to consider Magobet's "innocent owner" evidence to rebut the Commonwealth's *prima facie* case?

Magobet's Brief at 3.

In his related issues, Magobet challenges the grant of forfeiture and the denial of his motion for return of the $5,338.00. Our standard of review in an appeal from a forfeiture proceeding is settled. We review only to determine "whether [the] findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law." ***Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 University Drive***, 104 A.3d 411, 420 (Pa. 2014) (citations omitted).

Pennsylvania law provides "[money] . . . or things of value used or intended to be used to facilitate any violation of The Controlled Substance,

---

[8] Magobet and the trial court complied with Pa.R.A.P. 1925.

- 5 -

Drug, Device and Cosmetic Act" ["the Drug Act"] are subject to forfeiture. 42 Pa.C.S.A. § 5802(6)(i)(B). Because "the law generally disfavors forfeitures," the Forfeiture Act must "be strictly construed." *Commonwealth v. $34,440.00 U.S. Currency*, 174 A.3d 1031, 1038 (Pa 2017) (citation omitted).

In a forfeiture proceeding, "the Commonwealth bears the initial burden of proving . . . by a preponderance of the evidence, that a nexus exists between the money and a violation of the [Drug] Act." *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529 (Pa. 2005). "A preponderance of the evidence is tantamount to a 'more likely than not' standard." *Commonwealth v. $301,360.00 U.S. Currency*, 182 A.2d 1091, 1097 (Pa. Cmwlth. 2018).[9] The Commonwealth may satisfy its burden by circumstantial evidence, but it must show "more than a mere suspicion of a nexus." *Id*. If the Commonwealth establishes a substantial nexus between the money and the Drug Act violation, then the burden of proof shifts to the claimant to prove he owns the property, lawfully acquired the property, and did not unlawfully use or possess it. *See id*. "This safeguard, known as the 'innocent owner defense,' serves as a 'means of protecting a property owner from the harsh result of forfeiture because of illegal drug use to which the

---

[9] While decisions of the Commonwealth Court are not binding upon us, they may serve as persuasive authority. *See Commonwealth v. Ortega*, 995 A.2d 879, 885 (Pa. Super. 2010).

owner did not consent.'" ***Commonwealth v. 1997 Chevrolet and Contents Seized from Young***, 160 A.3d 153, 193 (Pa. 2017) (internal citation omitted).

Here, Magobet maintains his testimony that he "did not and was not operating the vehicle" and, even if he was the driver, "the amount of substance found in the vehicle can only be deemed to be considered [as intended for] personal use[,]" should have been credited. Magobet's Brief at 5. He further contends the trial court "failed to consider" his "innocent owner" evidence consisting of copies of two stimulus checks,[10] and a letter from his employer which allegedly substantiated his claim of being paid "under-the-table."[11] ***Id***. at 6.

The trial court concluded the Commonwealth established a substantial nexus between the $5,338.00 and drug activity; it further found Magobet's

---

[10] While Magobet argued at both the trial court and in this Court that he received three stimulus checks from the United States Treasury, he only furnished the trial court with copies of two checks. ***See*** N.T., 11/28/22, at 2, 9; Magobet's Exhibit A; Magobet's Brief at 6.

[11] Magobet, who is incarcerated, claims an unnamed person dropped off documentary evidence at the trial court on his behalf, which included the alleged employer letter. ***See*** N.T., 11/28/22, at 4-7; Magobet's Brief at 6. However, the trial court did not receive any such letter and it is not included in the certified record. ***See*** N.T., 11/28/22, at 4-7. While Magobet attached a copy of the purported letter to his brief, it is settled "any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief[.]" ***Commonwealth v. Bullock***, 170 A.3d 1109, 1124 n.11 (Pa. Super. 2017) (citation omitted).

"innocent owner" defense was not credible, and Magobet failed to rebut the Commonwealth's evidence the money came because of drug dealing. Trial Court Opinion, 3/1/23, at 16-19. In so concluding, it found:

> upon his arrival on the scene, Officer Frace observed [Magobet] parked in front of a known drug house speaking with a known drug offender in a high-traffic drug area at a time when [Magobet] was known to have a history of engaging in similar contacts in the past. [Magobet] was seated in the driver's seat of a black Cadillac which he had been operating while under a suspended license and in which he was the lone occupant. The vehicle was illegally parked and was not registered in [Magobet's] name. Upon his arrest, $5,338.00 in U.S. currency was found on his person and a small amount of methamphetamine found on the driver's floor of the vehicle in close proximity to where [Magobet] had been sitting. A subsequent search of the vehicle located a glass pipe with residue and a clear plastic tube with residue.

*Id*. at 12-13.

The trial court correctly notes in ***$34,440.00 U.S. Currency***, our Supreme Court held the Commonwealth could satisfy its evidentiary burden of demonstrating a substantial nexus between seized currency and a violation of the Drug Act by "relying solely upon the presumption that arises when money is uncovered in close proximity to controlled substance." ***$34,440.00 U.S. Currency***, 174 A.3d at 1040; ***see also*** Trial Court Opinion, 3/1/23, at 13. In other words, money found in close proximity to controlled substances is rebuttably presumed to be proceeds derived from the sale of a controlled substance. The trial court therefore concluded the Commonwealth met its initial burden by showing the $5,338.00 was found near the methamphetamine. ***See*** Trial Court Opinion, 3/1/23, at 15-17. Thus, the

burden shifted to Magobet to either demonstrate that, "(1) he [was] the owner of the property, (2) he lawfully acquired the property, and (3) the property was not unlawfully used or possessed by him[;]" or to "rebut the specific fact that the seized money was derived from drug sales, independent of proving the innocent owner defense." *$34,440.00 U.S. Currency*, 174 A.3d at 1040, 1045.

Here, the trial court held Magobet had not rebutted these presumptions, explaining:

> [Magobet] claims $2,000.00 of these monies came from two separate direct deposit stimulus transfers made into an account on his behalf . . . more than five months before his arrest . . . and that these monies were withdrawn by him within the week preceding his arrest. [Magobet] presented no corroborating evidence as to the account or documentation showing when the money was withdrawn. The balance of the monies claimed by [Magobet], $3,338.00, are attributable, according to [him], to under-the-table weekly payments he received in cash during the two-month period immediately preceding his arrest — approximately $500.00 each week — which [Magobet] testified were never deposited into an account because he had no account. The latter appears to contradict [Magobet's] testimony about his withdrawal a week prior to his arrest of the stimulus monies from the account into which they had been deposited. Again, [Magobet] presented no corroborating evidence from his employer or otherwise that such payments were ever made. Moreover, it strains credibility to believe that [Magobet] saved virtually every penny of the stimulus funds and under-the-table payments he claims to have received without using any of these monies to cover other expenses and coincidentally withdrew the stimulus monies within a week prior to his arrest, and by pure chance had on his person all of these monies when he drove to a known drug area, parked in front of a drug house, and was in contact with a known drug offender. And then, less than a week later, had an additional $2,000.00 on his person. From what source if not from dealing drugs?

Significantly, the record before us consists not only of the suspicious activity Officer Frace observed on August 25, 2021, including the small amount of methamphetamine and drug paraphernalia found in close proximity to the money in issue, but also other additional evidence of record relevant to establish[] a nexus. Six days after Officer Frace's observations, a search of [Magobet's] home resulted in the seizure of significant amounts of illegal controlled substances, including methamphetamine (the same controlled substance found in [Magobet's] vehicle on August 25, 2021), with a street value in excess of $46,000.00, as well as $2,000.00 in U.S. currency found on [Magobet's] person. During questioning, [Magobet] admitted his role as a major drug dealer in the area.

* * * *

. . . The nature and chronology of the events of [the encounter with police and the parole agent's discovery of drugs], and their proximity in time; the evidence of the presence of drugs and drug paraphernalia at the time of [Magobet's] arrest on August 25, 2021; the fact that the same person, [Magobet], was the owner/possessor of both the money in question and drugs found in close proximity in [Magobet's] vehicle (unlike the separate ownership of drugs and money discussed in ***$34.440.00 U.S. Currency***); the large amounts of money found on [Magobet's] person without any credible explanation; and [Magobet's] admission to trafficking in drugs; all logically, reasonably and legally support by clear and convincing evidence [the trial court's] conclusion that the $5,338.00 found on his person on August 25, 2021, was used in and/or was the proceeds of drug trafficking operations.

Trial Court Opinion, 3/1/23, at 16-18 (citation and footnote omitted).

The trial court's findings of fact are supported by substantial evidence, and we discern no error of law or abuse of discretion in its conclusions. ***See***

***All That Certain Lot or Parcel of Land Located at 605 University Drive***,

104 A.3d at 420. Moreover, Magobet's argument on appeal consists of

general, boilerplate citations to forfeiture law and a request we disregard the

trial court's credibility determination and reweigh the evidence in his favor. *See* Magobet's Brief at 7-13. This we cannot do. *See Esquilin*, 880 A.2d at 531 n.7 (stating that "in many instances, the trial judge in a forfeiture proceeding hears live witnesses and is in a position to render demeanor-based credibility determinations. In such instances, the usual deference applicable to credibility determinations may be dispositive.) (citation omitted); *see also Commonwealth v. Durham*, 9 A.3d 641, 645 (Pa. Super. 2010), (in a forfeiture proceeding, "it is the province of the trial court to judge the credibility of the witnesses and weigh the testimony offered. It is not the duty of an appellate court to act as a fact[]finder, but to determine whether there is sufficient evidence in the record to support the facts as found by the trial court.") (citation omitted). Magobet's claims do not merit relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/9/2024

- 11 -