J-S44009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THE GURU NANAK SIKH SOCIETY OF LEHIGH VALLEY, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| NORTHAMPTON COUNTY DISTRICT ATTORNEY'S OFFICE AND THE COLONIAL REGIONAL POLICE DEPARTMENT | : | No. 1266 EDA 2023 |

Appeal from the Order Entered April 19, 2023
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-MD-0000207-2023

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 23, 2024**

Appellant, The Guru Nanak Sikh Society of Lehigh Valley, Inc., appeals from the order entered on April 19, 2023, which dismissed Appellant's Petition for Return of Property.  We affirm.

On February 15, 2023, Appellant filed a Petition for Return of Property pursuant to Pennsylvania Rule of Criminal Procedure 588 (hereinafter "Appellant's Petition" or "Petition").  Within its Petition, Appellant averred that it is a nonprofit religious organization, which owns, operates, and manages a Sikh Temple in Nazareth, Pennsylvania.  Appellant's Petition, 2/15/23, at 2.  According to Appellant, on January 15, 2023, the Colonial Regional Police

_____

[*] Retired Senior Judge assigned to the Superior Court.

Department (hereinafter "the Police") responded to an incident at Appellant's Temple, where "individuals interfered with the donation box . . . held by" Appellant. *Id.* at 3. Appellant alleged that, in response to the situation, the Police "seized possession of [] approximately $1,500.00 . . . , the proceeds of the donation box." *Id.* at 3-4. Appellant claims that the Police refused to return the money to Appellant. *See id.* at 3-4. Therefore, Appellant filed a Petition, under Pennsylvania Rule of Criminal Procedure 588,[1] requesting that the trial court enter an order directing the Police and the Northampton County District Attorney's Office to return control of the money to Appellant. *Id.* at 4.

On April 19, 2023, the trial court held a hearing on Appellant's Petition. At the conclusion of the hearing, the trial court concluded that Appellant was not entitled to relief under Rule 588, as the Police did not "seize" the money. Specifically, the trial court held:

> Following a hearing on April 19, 2023, [the trial court] determined that [Appellant] and a third party disagreed over ownership of the money at [Appellant's] premises on January 15, 2023. [The Police] came to the premises in response to the dispute over the money. Pursuant to an agreement with [Appellant] and the third party, [the Police were] given the

---

[1] In relevant part, Rule 588 declares:

> A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof.

Pa.R.Crim.P. 588(A).

money for safekeeping until [Appellant] and the third party agreed who owned the money. On January 20, 2023, without the presence of the third party, [Appellant] asked [the Police] to return the money to them. Because the third party did not agree to this, [the Police] did not return the money to [Appellant] at that time.

. . .

Therefore, because there was an agreement for the [Police] to take the money until [Appellant] and the third party resolved the ownership of the money, there was no interference with [Appellant's] possessory interest in the money and there was no "taking" of the money. As such, there was no seizure under Pennsylvania Rule of Criminal Procedure 588.

Trial Court Opinion, 7/6/23, at 4-5 and 10-11 (citations omitted).

In its opinion, the trial court thoroughly summarized the evidence it received during the April 19, 2023 hearing:

[During the hearing, the trial court] viewed body camera footage from [Sergeant Keith Kulp, of the Colonial Regional Police Department, which showed what occurred when the Police] responded to the scene on January 15, 2023 and when they were given the money. The footage was admitted into evidence and marked as an exhibit. . . . The body camera footage of January 15, 2023 showed [Sergeant Kulp] . . . engage in the following dialogue with [Appellant's representative] and the third party:

SERGEANT KULP: So, I talked to the chief, ok, uh –

PERSON ONE: Chief -- ?

SERGEANT KULP: Yep, Chief --, he said would it resolve the issue if we take the box today?

PERSON ONE: You?

(Person One walks away and Sergeant Kulp walks over to another person in the temple)

SERGEANT KULP: Would it resolve the issue today if we take the box [with the money] and hold onto it for now?

PERSON TWO: Yeah, I mean wait, let me -- I don't want to speak for anybody but what is going to happen next week when there's another box here[?]

SERGEANT KULP: I don't know, I don't know but the chief said if both parties agree for us to take the box and hold it for now until you guys figure this out.

PERSON TWO: But what we're saying is because if we leave the donation box here and both parties locked it.

SERGEANT KULP: What if you have two donation boxes? One for your group to put in and one for their group to put in.

PERSON TWO: So the issue is taking the money out. That's the only thing.

SERGEANT KULP: What if you have control of one box and they have control of one box and you both have separate boxes.

PERSON [TWO]: But you can't have people, like hey, donate here, donate here that's -- I'm saying better than that they should prepare to lock the doors.  That's what I'm saying.

SERGEANT KULP: Well you know we can't do that.  That has to be done through you guys or the court.

SERGEANT KULP: We won't even open it up, we'll just take the box and secure it.

PERSON TWO: But you guys will be here next week again.

(side talk)

(Person One comes back over)

PERSON ONE: (inaudible)

SERGEANT KULP: It's still a civil issue -- we don't control the banks, we don't control the finance, we don't control anything else. So I talked to the chief about this whole thing and in order to resolve this today so there's no physical violence against anybody he said bring it up to them should we take the box for today and then you guys resolve the issue, whatever you got to do.

PERSON ONE: You know what it is, it's got nothing to do with the $300.00 in there nobody cares about that it's about the principle.

SERGEANT KULP: I know, it's about the principle of the whole thing and I understand that and I explained that to him it's about the principle of the whole thing so, but we are trying to avoid any physical confrontation today, because that's what's going to happen, I mean, you go open that box up and then whoever starts fighting even if it's both sides we're gonna arrest both parties. That's what's gonna happen. That's what we're here for. You guys open that box up, which you have a right to do, you open that box up, everybody starts fighting, we're just gonna take everybody.

PERSON ONE: Yeah, makes sense.

SERGEANT KULP: So, we're not gonna stop anybody from not opening that box, put it that way, so. You guys wanna open it up, it's your choice, we're just gonna take anybody into custody who fights.

PERSON ONE: The thing is, I know I can't convince them to go, I know I can't without opening the box. And I tried it -- (inaudible).

PERSON TWO to OFFICER: You don't take the box but you can take the money, the contents of what they want.

OFFICER to PERSON TWO: Do you have to count it?

PERSON TWO: Yeah, they can have one guy and --

OFFICER to PERSON TWO: Correct, so we'll open the box, sit down and count it and then turn the money over to us.

SERGEANT KULP: And then we'll control it for now until you guys figure it out.

PERSON TWO: Yes.

SERGEANT KULP to PERSON ONE: Alright, how about this, how about this. Can we just get this resolved. Two people from their side, two people from your side sit here together and count the money and then we'll control it until you guys figure it out.

PERSON ONE: Ok, so here's the thing, I was talking to them, they are ok to -- we are going to move on to next week, we don't want the money today.

SERGEANT KULP: So you just want them to –

PERSON ONE: Nope, nobody touches it.

SERGEANT KULP: Nobody touches it.

PERSON ONE: We will deal with it next week.

SERGEANT KULP: So you want to put a lock on it today?

PERSON ONE: We have a lock.

SERGEANT KULP: You have your lock on it, so you're going to let them put their lock on it?

PERSON ONE: Why don't we just leave it like this?

SERGEANT KULP: But that's not going to appease this situation. You know that. So what's the issue?

PERSON ONE: So pretty much what you're saying is, let both of them count and then you take the money?

SERGEANT KULP: Yeah.

PERSON ONE: Ok.

SERGEANT KULP: Two from you, two from them, count together and we'll take it until you guys figure it out.

PERSON ONE: Alright that's good.

SERGEANT KULP: Ok. Alright.

SERGEANT KULP to PERSON TWO: Two people from you, two people from them and then everybody else move back.

SERGEANT KULP: Ok everybody else can move back so there's no issues and no problems and we'll stay here while it's counted.

CONSTABLE: Is that the agreement?

[SERGEANT] KULP: Yeah, they agreed to it and also they can do it right here while we are standing here.

(Begins counting money)

Additionally, Sergeant Kulp testified during the hearing on April 19, 2023, that there was an agreement between [the Police, Appellant], and the third party where [the Police were] to take and hold the money for safekeeping until [Appellant] and the third party agreed who owned the money. Sergeant Kulp's testimony on this issue was as follows:

SERGEANT KULP: From beginning to end [the body camera video is] two hours long we were there for. But this portion here is going to talk about –

THE COURT: Just give her your name.

SERGEANT KULP: My name is Sergeant Keith Kulp with the Colonial Regional Police Department. This portion here where it's going to come up is where . . . the agreement was made between both parties to turn over the money -- to count the money together, to turn it over, but there's also a portion just a little bit before this where [Appellant], this gentlemen back here in the black coat,

at one point -- it's on the video here where he said his group didn't even want the money.

[ATTORNEY FOR THE POLICE]: Play that for the judge too.

In the video, Sergeant Kulp counted the money in front of [Appellant] and the third party and stated the amount. Both [Appellant] and the third party agreed for the [P]olice to count the money and keep it until the parties reached an agreement on the ownership of the money. In the video, [Person One] for one party agreed in the following exchange with Sergeant Kulp:

SERGEANT KULP: Two from you, two from them, count together and we'll take it until you guys figure it out.

PERSON ONE: Alright that's good.

[Person Two] for the other party agreed in the following exchange with Sergeant Kulp and another police officer:

OFFICER to PERSON TWO: Correct, so we'll open the box, sit down and count it and then turn the money over to us.

SERGEANT KULP: And then we'll control it for now until you guys figure it out.

PERSON TWO: Yes.

Trial Court Opinion, 7/6/23, at 4-5 and 10-11 (citations omitted).

As noted above, after hearing this evidence, the trial court concluded that the Commonwealth did not seize any property in this case and, therefore, Rule 588 did not provide Appellant with a vehicle for the return of the property. Trial Court Opinion, 7/6/23, at 4-5 and 12. The trial court thus dismissed Appellant's petition on April 19, 2023. Trial Court Order, 4/19/23, at 1-2.

Appellant filed a timely notice of appeal and now raises two claims to this Court:

[1.] Whether the trial court erred as a matter of law when it determined that no seizure of property occurred when the [Police] confiscated $1,456.00 in currency belonging to [Appellant] and refused to return it when asked to do so?

[2.] Whether the trial court erred as a matter of law when it determined that jurisdiction under Pennsylvania Rule of Criminal Procedure 588 failed to exist when law enforcement refused to return personal property belonging to [Appellant] after being asked to do so?

Appellant's Brief at 5 (some capitalization omitted).[2]

"Our review of a trial court's decision on a petition for the return of property is limited to examining whether the findings of fact made by the trial court are supported by competent evidence and whether the trial court abused its discretion or committed an error of law." **Singleton v. Johnson**, 929 A.2d 1224, 1227 n.5 (Pa. Cmwlth. 2007). Further, Appellant's claims require that we interpret and apply Pennsylvania Rule of Criminal Procedure 588. The interpretation of a rule of criminal procedure is "a question of law, for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Hann**, 81 A.3d 57, 65 (Pa. 2013). "The Rules of Criminal Procedure are to 'be construed in consonance with the rules of statutory construction,' Pa.R.Crim.P. 101(C), which requires us to interpret the provisions in accord with the plain meaning of their terms." **Commonwealth v. Allen**, 107 A.3d 709, 716 (Pa. 2014) (brackets omitted).

---

[2] "[B]oth this Court and the Commonwealth Court have jurisdiction to decide an appeal involving a motion for the return of property filed pursuant to [Pennsylvania Rule of Criminal Procedure] 588." **Commonwealth v. Durham**, 9 A.3d 641, 642 n.1 (Pa. Super. 2010).

In relevant part, Rule 588 declares:

> A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Pa.R.Crim.P. 588(A).

Rule 588 is clear. According to its plain terms, the rule only permits "[a] person aggrieved by a search and seizure" to "move for the return of property." *See id.* "A 'seizure' of property . . . occurs when there is some meaningful interference with an individual's possessory interests in that property."[3] *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (some quotation marks omitted). In the case at bar, the Police did not affect a "seizure" of the money, as the Police did not interfere with anyone's possessory interest in the property. Instead, as the trial court concluded – and as the record demonstrates – Appellant and a third party disagreed as to the ownership of a sum of money and, due to this disagreement, Appellant, the third party, and the Police entered into an express agreement, where the Police agreed to retain possession of the currency until Appellant and the third party "agreed who owned the money." Trial Court Opinion, 7/6/23, at 4-5 and 10-11. Upon the occurrence of this event, the Police agreed to return the money to the

_____

[3] Appellant agrees that the current appeal turns on "whether a seizure occurred under the law." Appellant's Brief at 17 n.5. Therefore, we will not discuss the separate issue of whether Appellant was "aggrieved by a search." *See* Pa.R.Crim.P. 588.

lawful owner identified by agreement between Appellant and the third party. *Id.* at 4-5. Further, the trial court concluded, there was no evidence that Appellant and the third party came to an agreement as to who legally owned the money. *Id.* Therefore, under the express agreement between Appellant, the third party, and the Police, the Police continued to retain possession of the money. *Id.* at 5.

Here, Appellant, the third party, and the Police entered into an express agreement where the Police retained possession of the money until a stated event occurred, at which time the Police agreed to return the money to the lawful owner identified by agreement between Appellant and the third party. Since the express agreement between Appellant, the third party, and the Police transferred possession of the money to the Police until its lawful owner was identified, the acceptance and retention of the money by the Police did not constitute a "seizure" under the law, as the Police did not interfere with anyone's possessory interests in the money. *See Soldal*, 506 U.S. at 61. Since Appellant has not been "aggrieved by a . . . seizure," Pennsylvania Rule of Criminal Procedure 588 does not provide Appellant with a vehicle for the return of this property. The trial court thus properly dismissed Appellant's Rule 588 petition and Appellant's claims to the contrary fail.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>2/23/2024</u>